IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| David M. Steffy, by his attorney in fact, and Lila T. Steffy, his wife | ) ) ) |
| Plaintiff, | ) Civil Action No. 09-538 |
| -vs- | ) ) |
| Liberty Life Assurance Company of Boston, National City Corporation Welfare Benefits Plan, and National City Corporation | ) ) ) ) |
| Defendant. | ) |

AMBROSE, Chief District Judge.

## OPINION AND ORDER OF COURT

Defendants Liberty Life Assurance Company of Boston ("Liberty"), National City Corporation Welfare Benefits Plan (the "Plan"), and National City Corporation ("National City"), (hereinafter collectively referred to as "Defendants") filed a motion to dismiss Plaintiff's first amended complaint ("amended complaint"), docket entry no. 14, in this ERISA case.[1] Based on the reasons discussed in the opinion below, I am denying the Defendants' motion without prejudice with leave to renew by motion for summary judgment at the close of discovery.

## OPINION

### A. Standard and Scope of Review

Defendants filed their motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). When deciding whether to grant or deny a 12(b)(6) motion the Supreme Court has held:

---

[1] Defendants filed a motion to dismiss at docket entry no. 12 and docket entry no. 14. Docket entry no. 12 will be terminated since it is duplicative of docket entry no. 14.

1

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atlantic Co. v. Twombly*, 550 U.S. 544, 555 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007). (Cites and footnote omitted). *See also*, *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (a plaintiff's factual allegations must be enough to raise a right to relief above the speculative level).

Recently, in *Ashcroft v. Iqbal*, ___ U.S.___, 129 S.Ct. 1937 (2009), the Supreme Court held, ". . . a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at1949 (citations omitted).

In *Iqbal,* the Court specifically highlighted the two principles which formed the basis of the *Twombly* decision: First, for the purposes of a motion to dismiss, courts must accept as true all factual allegations set forth in the complaint, but courts are not bound to accept as true any legal conclusions couched as factual allegations. *Id.* at 1949-1950. *See also, Fowler v. UPMC Shadyside*, ___ F.3d ___ (3d Cir. 2009), 2009 WL 2501662.  Second, a complaint will only survive a motion to dismiss if it states a plausible claim for relief, which requires a court to engage in a context-specific task, drawing on the court's judicial experience and common sense. *Id.* at 1950.  Where well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but has not shown, the complainant is entitled to relief. *Id.,* citing, F.R.Civ.P. 8(a)(2).

In addition to the above, based on the arguments and the various documents submitted by the Defendants in this case, I note that I may "consider certain narrowly defined types of material without converting the motion to dismiss" to a motion for summary judgment. *In re Rockefeller Ctr. Props. Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). I may consider "a document integral to or explicitly relied upon in the complaint" or "an undisputedly authentic document . . . if the plaintiff's claims are based on the document." *Id.*[2]

### B. Factual Allegations[3]

Plaintiff, David Steffy ("Mr. Steffy"), worked for National City as a vice president from May of 1996 to June 1, 2007 and sold mortgage-backed securities and short-term investments on National City's behalf. (Amended complaint, ¶¶ 7-8). In 2006, National City took note that Mr. Steffy was losing his focus, his memory, and having cognitive problems which caused his supervisor to relieve him of some his accounts, which led to a decrease in his sales production. (Amended complaint, ¶ 9). Mr. Steffy sought and obtained a diagnosis, underwent medical treatment, and notified his superiors of this treatment. (Amended complaint, ¶ 11, 13). Despite receiving medical treatment, his symptoms did not improve. (Amended complaint, ¶ 14). A National City human resources representative "forced" him to sign an agreement on June 1, 2007, the day National City terminated Mr. Steffy from his employment due to his mental health condition. (Amended complaint, ¶ 15).

---

[2] I mention this standard because Defendants attached various documents, two of which are referenced in the opinion. I do not find any of the documents submitted by Defendants to be "integral to" or "explicitly relied upon in" the amended complaint.

[3] The facts set forth below are derived solely from the allegations found in the amended complaint (unless otherwise noted), which I accept as true for purposes of deciding this motion. Defendants in their reply brief attempt to argue that certain facts set forth in the amended complaint – for example, the alleged fact that Mr. Steffy was terminated – are untrue. Under the law, I must accept as true all well-pleaded, plausible facts and arguing factual inaccuracies at this stage of the litigation is futile.

According to Defendants, this agreement indicated that Mr. Steffy waived "any and all rights and claims" he had against National City arising out of his employment or termination. (Defendants' brief, p. 2).

Subsequent to his termination, National City put Mr. Steffy "in touch with" a job coach who could not place him in another position due to his mental condition. Although National City maintained a short term disability ("STD") program, the amended complaint alleges Mr. Steffy was unaware of it and National City did not inform him of his rights under the STD Plan when he was terminated. (Amended complaint, ¶¶ 19-20). National City also maintained a long term disability ("LTD") program. (Amended complaint, ¶¶ 21-22, 26).

In April of 2008, Steffy was diagnosed with dementia. In May of 2008, Mrs. Steffy contacted her husband's former assistant at National City who reported that during the last few months of his employment, Mr. Steffy suffered from total lapses of memory. Also, in May of 2008, Mrs. Steffy discovered that National City had a disability plan and she applied for STD benefits on behalf of her husband. By way of a letter dated June 13, 2008, Liberty denied the claim for STD benefits on the grounds that Mr. Steffy was not actively employed by National City in May of 2008 when the application was made. (Amended complaint, ¶¶ 30-34).

In October of 2008, Mr. Steffy's neurologist diagnosed him with Alzheimer's disease and opined that Mr. Steffy had been afflicted with the disease for five years. In November of 2008, Mrs. Steffy appealed Liberty's denial of benefits and included the new information from Mr. Steffy's neurologist. In December of 2008, Liberty informed the Steffys that it would uphold its prior decision to deny STD benefits, again noting that Mr. Steffy was not actively employed by National City at the time a claim for benefits was first made. This notification also indicated, for the first time,

that the disability plan required an applicant to file a claim within 14 days from the date of disability. Mr. Steffy alleges he never received a summary plan description notifying him that he had to file a disability claim within 14 days from the date of disability. (Amended complaint, ¶¶ 36-40).

In February of 2009, Mrs. Steffy contacted National City about LTD benefits. In March of 2009, Liberty notified her that she could not file a claim for LTD benefits since STD benefits had been denied. (Amended Complaint ¶¶ 40-43).

### C. Discussion

**1. Dismissal of Mr. Steffy's STD benefit claims**

Defendants argue that Mr. Steffy is not entitled to STD benefits because: (1) National City's STD program is not subject to ERISA, (2) Mr. Steffy waived his rights to STD benefits when he signed the agreement the day he was terminated, and/or (3) Mr. Steffy admitted he was not entitled to such benefits. I will address each of the three arguments, seriatim.

First, Defendants claim this court lacks subject matter jurisdiction because National City's benefit plans are not subject to ERISA.[4] "The Employee Retirement Income Security Act of 1974 (ERISA) permits a person denied benefits under an employee benefit plan to challenge that denial in federal court." *Metropolitan Life Ins. Co. v. Glenn*, ___ U.S. ___, 128 S.Ct. 2343, 2346 (2008). "Congress enacted ERISA to 'protect . . . the interests of participants in employee benefit plans and their beneficiaries' by setting out substantive regulatory requirements for employee benefit plans and to 'provid [e] for appropriate remedies, sanctions, and ready access to the Federal courts.'" *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208, 124 S.Ct. 2488 (2004) *citing,* 29 U.S.C. § 1001(b). *See*

---

[4] The amended complaint suggests jurisdiction is proper pursuant to 29 U.S.C. § 1132(e) which gives this court exclusive jurisdiction of civil actions brought by a participant, beneficiary, or fiduciary of an ERISA plan.

*also, Massachusetts v. Morash,* 490 U.S. 107, 112, 109 S.Ct. 1668 (1989) (Congress passed ERISA to safeguard employees from the abuse and mismanagement of funds that had been accumulated to finance various types of employee benefits).

Specifically, ERISA broadly covers "employee benefit plans" which include "employee welfare benefit plans" which are defined as:

> any plan, fund or program . . . established or maintained by an employer . . . for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) . . . benefits in the event of sickness, accident, disability, death or unemployment . . ."

29 U.S.C. § 1002(1). "ERISA applies to 'any employee benefit plan if it is established or maintained . . . by any employer engaged in commerce.'" *Spillane v. AXA Financial, Inc.,* __ F.Supp.2d ___, 2009 WL 2215078,*2 (July 22, 2009), *citing, Deibler v. United Food & Commercial Workers' Local Union 23*, 973 F.2d 206, 209 (3d Cir.1992) (*quoting* 29 U.S.C. § 1003(a)).

Despite the broad scope of benefit plans covered by ERISA, the Secretary of Labor promulgated a regulation that excludes certain employer payroll practices from the application of ERISA. This regulation (entitled "payroll practices") sets forth that an "employee benefit welfare plan" shall <u>not</u> include:

> [p]ayment of an employee's normal compensation, out of the employer's general assets, on account of periods of time during which the employee is physically or mentally unable to perform his or her duties, or is otherwise absent for medical reasons[.]

29 C.F.R. § 2510.3-1(b)(2). In this case, Defendants rely on the "payroll practices" exclusion quoted above and the interpretation of this exclusion in *Schwartz v. Liberty Life Assurance Co. of Boston*, 470 F.Supp.2d 511 (E.D. Pa. 2007), for the proposition that National City's STD benefit plan is not subject to ERISA, thereby stripping this court of subject matter jurisdiction.

6

In *Schwartz*, the court granted summary judgment in favor of the employer (Citizens Financial) based on uncontroverted evidence produced during discovery – primarily an affidavit from the director of employee benefits for Citizens Financial – indicating that the STD benefits at issue were paid directly to the employee out of the employer's general assets. *Id.* at 516. The *Schwartz* court specifically held that, "[a] welfare benefit plan's source of funding is the leading indicator which both the [Department of Labor] and the courts have used to determine whether said plan is subject to governance pursuant to ERISA." *Id.* at 517. In support of this conclusory statement, the *Schwartz* court relied on 29 C.F.R. 2510.3-(b)(2) and two unreported cases.[5] *Id.* at 515.

At this juncture it is unclear to me whether National City, the employer, directly paid Mr. Steffy his "normal compensation" as an STD benefit out of its general assets in accordance with its STD plan.[6] Mr. Steffy specifically alleges that he received less than his "normal compensation" after he was terminated, and he does not allege that he received "normal compensation" as an STD benefit at any time he was "absent" or "mentally unable to perform" his job while employed by National City. Therefore, discovery is necessary to enable the parties to fully develop facts relative to this matter. Because the amended complaint has pled facts sufficient for me to find it plausible that the disability plan at issue is not subject to the payroll practices ERISA exclusion, I decline to dismiss

---

[5] The unreported cases were *Capriccioso v. Henry Ford Health Systems*, no. 99-1369, 2000 WL 1033030 (6th Cir. 2000) and *Laney v. Independence Blue Cross,* no. 04-1822, 2006 WL 724559 (E.D. Pa. March 15, 2006). I note that like *Schwartz*, both of these unreported cases were rendered following the close of discovery, pursuant to summary judgment motions and both cases involved the employer using its general assets to directly pay the employee his and her "normal compensation."

[6] Like the defendants in *Schwartz*, National City submitted an affidavit in support of its contention that its STD plan meets all the requirements of the "payroll practices" exclusion. It is inappropriate for me to consider the affidavit at this juncture, since discovery has not ensued thereby depriving Mr. Steffy of the opportunity to discover any evidence which may contradict statements set forth in the document.

the STD claims for lack of subject matter jurisdiction.[7]

Next, I turn to Defendants' second argument that the agreement signed by Mr. Steffy the day he was terminated was a "general release" which constitutes a waiver of his claims to STD benefits. "'Waiver' is a vague term used for a great variety of purposes, good and bad, in the law. In any normal sense, however, it connotes some kind of voluntary knowing relinquishment of a right." *Coventry v. U.S. Steel Corp.*, 856 F.2d 514, 521 *citing, Green v. United States,* 355 U.S. 184, 191, 78 S.Ct. 221, 226, 2 L.Ed.2d 199 (1957).

Based on the facts pled in the amended complaint, National City allegedly stripped Mr. Steffy of various accounts prior to his termination because of his deteriorating mental condition and ultimately terminated him due to this condition. (Amended complaint, ¶¶ 9, 15). The amended complaint also alleges that Mr. Steffy suffered from Alzheimer's at the time of his termination. (Amended complaint, ¶ 36). These allegations suggest that Mr. Steffy may not have possessed the mental ability to understand what he signed on the day he was terminated. Based on these facts, I decline to dismiss Counts I, II and III on the basis of waiver.[8]

Finally, Defendants suggest that in his amended complaint, Mr. Steffy admits that he did not timely file for STD benefits.  Mr. Steffy responds by noting that he was disabled while employed, he was terminated before he could file for any benefits, he did not know about the STD plan and was not provided with the STD plan upon his termination. In addition, based on the amended complaint, Mr. Steffy's cognitive abilities were allegedly impaired some time before and on the day of his

---

[7] My ruling on this matter also applies Defendants' argument suggesting that the payroll practices exclusion bars  Mr. Steffy's ERISA §510 claim. Thus, I deny the motion to dismiss the §510 claim on these same grounds.

[8] Based on this determination, Defendants' request that the release bar Mr. Steffy's FMLA claim (Count IV) is likewise denied.

termination. Once his wife confirmed the duration of his impairment and learned of the existence of the STD benefits, she applied for those benefits shortly thereafter. Based on these alleged facts, discovery must be conducted to ascertain whether Defendants' argument with respect to the timeliness of Mr. Steffy's application for disability benefits is meritorious in light of these potentially equitable tolling allegations.

### 2. Dismissal of Mr. Steffy's LTD benefit claims

Defendants argue for a dismissal of Mr. Steffy's LTD claims suggesting that the verbal claim made by Mrs. Steffy was untimely and inadequate and therefore failed to satisfy the administrative requirements of the LTD plan. In response, Mr. Steffy argues: (1) Liberty notified his wife in December of 2008 that all administrative remedies had been exhausted making any additional attempt to secure benefits for him futile, and (2) the alleged facts set forth his amended complaint suggest equitable estoppel may excuse the failure to exhaust his administrative remedies. In light of Mr. Steffy's response and the allegations in his amended complaint, discovery on this matter must be conducted. For these reasons, the motion to dismiss the LTD claims is denied.

### 3. Counts II and III are duplicative of Count I

Next, Defendants rely on *Smith v. Contini,* 205 F.3d 597 (3d Cir. 2000), for the proposition that Mr. Steffy's ability to pursue ERISA benefits under §502(a)(1) (*see,* Count I of Mr. Steffy's amended complaint) affords him an adequate remedy at law and bars further remedies under §502(a)(3). (*See,* Count II, breach of fiduciary duty, and Count III, equitable estoppel in the amended complaint). Mr. Steffy responds by arguing that the Third Circuit in *In re Unisys Corp. Retiree Med Benefit "ERISA" Litig.*, 57 F.3d 1255, 1264 (3d Cir. 1995), allowed the class of ERISA plaintiffs to raise a claim for ERISA benefits and an alternative breach of fiduciary claim. Since this case is

in the pleading stage, and not summary judgment stage, I find Defendants' reliance on *Smith v. Contini* (a decision rendered pursuant to a summary judgment motion)*,* to be misplaced at this time. I therefore, decline to dismiss Counts II and III as duplicative of Count I.

### 4. Breach of Fiduciary Duty and Equitable Estoppel Claims Circumvent ERISA

Defendants next argue that the sole determinant of whether Mr. Steffy is entitled to benefits are the express terms of the ERISA plan at issue. However, deception of the employee by his fiduciary employer and the employee's detrimental reliance on that deception can give rise to equitable claims. *Hooven v. Exxon Mobil Corp*., 465 F.3d 566, 578 (3d Cir. 2006) (any plaintiff who relies on an inaccurate or misleading term of an SPD to his or her detriment can recover on a claim for breach of fiduciary duty, or, in extraordinary circumstances, an equitable estoppel claim under ERISA section 502(a)(3)(B)). "[S]atisfaction by an employer as plan administrator of its statutory disclosure obligations under ERISA does not foreclose the possibility that the plan administrator may nonetheless breach its fiduciary duty owed plan participants to communicate candidly, if the plan administrator simultaneously or subsequently makes material misrepresentations to those whom the duty of loyalty and prudence are owed." *In re Unisys,* 57 F.3d at 1264; *see also, Daniels v. Thomas & Betts Corp.*, 263 F.3d 66, 75-76 (3d. Cir 2001) ([I]f an employee proves that an employer, acting as a fiduciary, made an inaccurate statement holding a substantial likelihood of misleading a reasonable employee into making a harmful decision regarding benefits, and that he relied to his detriment on that statement in making such a decision, the employee is entitled to equitable relief).

The amended complaint alleges that Mr. Steffy's employer: (1) noticed Mr. Steffy's loss of memory, focus and cognitive problems, (2) was notified by Mr. Steffy that he was undergoing medical treatment for these conditions, (3) was terminated because of these conditions, (4) supplied

Mr. Steffy with a job coach who could not place Mr. Steffy because of these conditions, and (5) despite its knowledge of Mr. Steffy's mental condition, failed to inform him of his potential eligibility for STD and LTD benefits among other things. (Amended complaint, ¶¶ 9, 13, 17, 21). Based on these alleged facts, it would be premature to dismiss the equitable estoppel and breach of fiduciary claims. Discovery should be conducted to ascertain whether Defendants misled Mr. Steffy or failed to communicate the existence of employee benefits in such a way that someone with Mr. Steffy's alleged deficient mental condition could understand and remember them. For these reasons, I decline to dismiss the claims at this juncture.

**5. Failure to Assert a *Prima Facie* case for Breach of Fiduciary Duty and Equitable Estoppel**

To allege and prove a breach of fiduciary duty for misrepresentation, a plaintiff must establish each of the following elements: (1) the defendant's status as an ERISA fiduciary acting as a fiduciary; (2) a misrepresentation on the part of the defendant; (3) the materiality of that misrepresentation; and (4) detrimental reliance by the plaintiff on the misrepresentation. *Burstein v. Retirement Account Plan For Employees of Allegheny Health, Education and Research Foundation*, 334 F.3d 365, 384 (3d Cir. 2003). To state cause of action for equitable estoppel under ERISA, an employee must establish: (1) material representation, (2) reasonable and detrimental reliance upon representation, and (3) extraordinary circumstances. *Id.,* at 383, *citing*, § 502(a)(3), 29 U.S.C.A. § 1132(a)(3).

Although Defendants argue that they were not acting as fiduciaries at the time of the alleged conduct, I disagree based solely on the allegations contained in the amended complaint. Defendants also contend they made no material representations or omissions to Mr. Steffy. Again I disagree, and

find that discovery must be conducted to ascertain whether Defendants misled Mr. Steffy (or omitted information), especially considering Mr. Steffy's deficient mental condition of which his employer was allegedly aware. In sum, the amended complaint asserts facts sufficient to meet the *prima facie* elements of these two equitable claims.

### 6. Counts I, II and III have been brought against Improper Defendants

Defendants suggest that Mr. Steffy's 502(a)(1)(B) claim (Count I) cannot be brought against Liberty or National City; but rather, can only be brought against the Plan. In *Evans v. Employee Benefit Plan, Camp Dresser & McKee, Inc.*, the Third Circuit specifically stated, "[e]xercising control over the administration of benefits is the defining feature of the proper defendant under [502(a)(1)(B)]...". *Evans,* 311 Fed.Appx. 556, 558 (3d Cir. 2009). Accordingly, dismissal of claims against National City and Liberty without the benefit of discovery would be premature.

### 7. Dismissal of the FMLA Interference Claim

I have already disposed of Defendants' first basis for dismissing of the FMLA claim in footnote 7 above, and I will not reiterate that rationale here. Next, Defendants argue Mr. Steffy's amended complaint fails to assert a *prima facie* case for an FMLA claim.

" 'FMLA interference claims are derived from 29 U.S.C. § 2615(a)(1),' and that '[t]o succeed on an interference claim, a plaintiff must demonstrate that he or she was entitled to and denied some benefit under the FMLA.' " *Erdman v. Nationwide Ins. Co.,* ___ F.3d ___, 2009 WL 3018116, *7 (3d Cir. Sept. 23, 2009), citing *Erdman v. Nationwide Ins. Co.,* 510 F.Supp.2d 363, 370 n. 4 (M.D.Pa.2007).

The amended complaint contains the following relevant, non-conclusory facts: (1) starting in 2006, National City took accounts away from him; (2) in 2006 Mr. Steffy notified his superiors

that he was undergoing medical treatment for loss of memory, loss of focus and cognitive problems; (3) Mr. Steffy was terminated; and (4) National City supplied Mr. Steffy with a job coach who could not place Mr. Steffy because of his mental condition. (Amended complaint, ¶¶ 9, 13, 17, 21). Whether National City informed Mr. Steffy of his potential eligibility for FMLA benefits among other things in such a way that someone with Mr. Steffy's alleged affliction could understand remains a matter for discovery. For these reasons, I decline to dismiss the FMLA claim at this time.

### 8. Dismissal of ERISA § 510 Claim

I have already disposed of Defendants' first reason to dismiss the ERISA §510 claim in footnote 7 above.  In addition, Defendants argue that Mr. Steffy's  ERISA §510 claim must be dismissed because he failed to plead that Defendants possessed the specific intent to interfere with his rights to ERISA benefits.

In *Eichorn v. AT & T Corp*., the Third Circuit held:

> Congress enacted § 510 "primarily to prevent unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension benefits." *Dewitt v. Penn-Del Directory Corp*., 106 F.3d 514, 522 (3d Cir.1997). We have held an employer violates § 510 when it acts with the specific intent to interfere with an employee's right to benefits. *DiFederico v. Rolm Co.*, 201 F.3d 200, 204-05 (3d Cir.2000). To prove a *prima facie* case under § 510 a plaintiff must show (1) that an employer took specific actions (2) for the purpose of interfering (3) with an employee's attainment of pension benefit rights. *Gavalik v. Cont'l Can Co.*, 812 F.2d 834, 852 (3d. Cir.), *cert. denied*, 484 U.S. 979, 108 S.Ct. 495, 98 L.Ed.2d 492 (1987).

*Eichorn,* 248 F.3d 131, 149 (3d Cir. 2001).

The amended complaint alleges that when Mr. Steffy was fired, his employer had known for some time prior about Mr. Steffy's cognitive and memory problems and knew he was undergoing treatment for his mental condition. Assuming these facts to be true, it follows that National City

13

knew that Mr. Steffy lacked the capacity to fully realize what he was signing when a representative from human resources "forced" him to sign an agreement (which, per Defendants, incorporated a general release) and paid Mr. Steffy less money than what he was allegedly entitled to receive, the day he was terminated. These facts are sufficient to withstand Defendants' motion to dismiss.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| David M. Steffy, by his attorney in fact, and Lila T. Steffy, his wife | ) ) ) |
| Plaintiff, | ) Civil Action No. 09-538 |
| -vs- | ) ) |
| Liberty Life Assurance Company of Boston, National City Corporation Welfare Benefits Plan, and National City Corporation | ) ) ) ) |
| Defendant. | ) |

AMBROSE, Chief District Judge.

## **ORDER**

AND NOW, this 7th day of October, 2009, after careful consideration, and for the reasons set forth in the accompanying Opinion, the Motion to Dismiss (docket entry no. 14) is denied without prejudice with leave to renew by motion for summary judgment at the close of discovery.

A Case Management Conference is scheduled for November 12, 2009 at 9:30 a.m.

                                                BY THE COURT:

                                                s/ Donetta W. Ambrose
                                                Donetta W. Ambrose,
                                                Chief U.S. District Judge